IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Colleton Preparatory Academy, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | C/A No. 2:04-531-18 |
| | ) | |
| vs. | ) | |
| | ) | **ORDER and OPINION** |
| Hoover Universal, Inc, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This certification order requests clarification of recent South Carolina Supreme Court decisions on the economic loss rule and the South Carolina Unfair Trade Practices Act ("SCUTPA"), respectively. Plaintiff Colleton Preparatory Academy, Inc. brought this action for negligence, recklessness and/or gross negligence, as well as a violation of the SCUTPA, for damages caused to plaintiff's roof trusses. Defendant Hoover Universal, Inc., was subsequently held in default for failure to answer. Following a bench trial, this court entered an award of $871,690.15[1] in favor of plaintiff. Plaintiff's motion for reconsideration requests the court reverse its conclusion that the economic loss rule bars plaintiff's negligence claim. Defendant's motion to amend alleges the court erred in concluding that case law does not bar plaintiff's unfair trade practices claim.[2]

Upon consideration of the parties' briefs, the court clarifies its previous order and

---

[1] If the earliest time for such repairs is during the summer, the award is lowered to $690,158.62.

[2] The additional issues raised in defendant's motion to amend (regarding attorneys' fees and cost of temporary facilities) will be addressed in a separate order.

certifies the questions addressed below.

## I.     Economic Loss Rule

Plaintiff's administration building was constructed in 1972 with fire retardant treated ("FRT") wood manufactured by defendant's predecessor.  Plaintiff discovered structural problems in 2002, and subsequently brought this suit alleging the wood deteriorated and lost strength prematurely.  The economic loss rule is implicated because plaintiff's expert conceded that the only item or material that has deteriorated or been damaged is the FRT wood. (Tr. at 202.)  Plaintiff's structural engineering and roof structures expert noted that truss failure, including partial or full collapse, will eventually occur.

Plaintiff contends the Order incorrectly applied the economic loss rule in South Carolina.  In sum, plaintiff argues a negligence claim may lie in this context if defendant breaches an industry standard or unreasonably subjects plaintiff to serious risk of personal injury.  This contention derives from two state supreme court decisions addressing the economic loss rule.  In Kennedy v. Columbia Lumber and Manufacturing Co., 299 S.C. 335, 384 S.E.2d 760 (1989), the court carved an exception to the economic loss rule, permitting a tort action even if the only loss is economic, when a "builder has violated an applicable building code; (2) the builder has deviated from industry standards, or (3) the builder has constructed housing he knows or should have known will pose serious risks of physical harm." 299 S.C. at 347, 384 S.E.2d at 738.  A policy of "protecting the modern new home buyer" influenced this holding: "where a building code or industry standard does not apply, public policy further demands the imposition of a

legal duty on a builder to refrain from constructing housing that he knows or should know will pose serious risks of physical harm." Id. at 346, 384 S.E.2d at 737.

Plaintiff contends the supreme court's subsequent decision in Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc., 320 S.C. 49, 463 S.E.2d 85 (1995), expands Kennedy's holding beyond the home builder/buyer context. Griffin considered a contractor's professional malpractice action against the engineer supervising its construction project. The court held that where "there is a special relationship between the alleged tortfeasor and the injured party not arising in contract, the breach of that duty of care will support a tort action." Griffin at 55, 463 S.E.2d at 88. Important for plaintiff's argument, the court in Griffin also noted

> [w]e adhere to the Kennedy application of the "economic loss rule."
> . . . .
>     In our view, the Kennedy application of the economic loss rule maintains the dividing line between tort and contract while recognizing the realities of modern tort law. . . . A breach of duty arising independently of any contract duties between the parties, however, may support a tort action.

Id.

Plaintiff contends that defendant breached industry standards and its FRT product poses a serious risk of physical harm, either of which will support a tort action. Plaintiff's analysis assumes that Kennedy is not limited to the homebuyer context. The Fourth Circuit has indirectly suggested a breach of standards could give rise to a tort claim in the non-housing context. Palmetto Linen Service, Inc. v. U.N.X. Inc., 205 F.3d 126 (4th Cir. 2000). Palmetto Linen considered a commercial laundry cleaner's negligence claim against a pump provider. Citing Kennedy, the court barred the

plaintiff's negligence claim under the economic loss rule because, among other things, plaintiff did not claim that defendant breached any industry standard or code provision. The court implicitly suggested, but did not conclude, that this allegation would support a tort claim in a non-housing context. Judge Duffy has applied Kennedy outside the home buyer/builder context twice, both times citing to Palmetto Linen. See Campbell v. Johnson & Towers, Inc., No. 2:99-0266-23, 2000 U.S. Dist. LEXIS 19958 at *18 (D.S.C. Nov. 30, 2000); Eaton Corp. v. Trane Carolina Plains, 350 F. Supp. 2d 699, 703-04 (D.S.C. 2004).

This court is concerned that plaintiff's argument is seemingly inconsistent with case law. Kennedy does not support the proposition that "breach of industry standards" is a universal exception to the economic loss rule. Kennedy's holding is expressly limited to the home buyer/builder context, and is specifically premised on a policy of protecting the new home buyer. See Bishop Logging Co. v. John Deere Indus. Equip. Co., 317 S.C. 520, 529, 455 S.E.2d 183, 188 (Ct. App. 1995) (describing Kennedy as a partial rejection of the economic loss rule "in the residential home building context"). That policy does not apply in the case at bar. The language plaintiff cites in Griffin does not extend Kennedy beyond the housing context, but provides a conceptual basis to carve another "exception" to the economic loss rule. Both Kennedy and Griffin limit the rule based on the derivation of the duty owed to plaintiff. Griffin builds on Kennedy to create a related, although separate, exception.

This court respectfully disagrees with Judge Duffy's application of Kennedy. Prior to Palmetto Linen, Judge Hawkins held that Kennedy's rejection of the economic

loss rule was limited to the homebuyer context. South Carolina Elec. & Gas Co. v. Westinghouse Elec. Corp., 826 F. Supp. 1549, 1556 (D.S.C. 1993) (noting "so far, South Carolina has only rejected the rule in the home buyer context"). Even after the Fourth Circuit's reference to Kennedy in Palmetto Linen, other courts in this district have been hesitant to expand Kennedy beyond the housing context. In Bennett v. Ford Motor Co., 236 F. Supp. 2d 558, 562 (D.S.C. 2002), Judge Blatt considered whether the economic loss rule prohibited a negligent design and failure to disclose action concerning defective engine gaskets. The court ultimately declined to extend supplemental jurisdiction over the remaining state claims and remanded the action to state court on the basis that the issue created a novel or complex issue of state law. In doing so, the court concluded it was "not inconceivable" - nor, by implication, obvious - that "an argument could be made to extend the use of 'industry standards' to create an additional exception to the economic loss rule." Bennett, 236 F. Supp. 2d. at 562. Judge Blatt's decision viewed such an application as an expansion of state law.

Even if a tort claim could lie on account of a breach of standards, plaintiff's claim would fail as factually insufficient. Plaintiff identifies the relevant industry standard as the National Design Specification ("NDS") permitting a 10% reduction in strength due to FRT treatment. (Pl.'s mot. for recons. at 4.) Plaintiff contends this standard was breached because tests performed in 2002 measured loss of wood strength at greater than 10%. Plaintiff also notes that the standard was revised in the 1980s to account for a higher percentage of strength loss. (Tr. at 36, 92-93.) However, the NDS standard refers to loss of wood strength at time of treatment. (Tr. at 36-37, 56-58.) Plaintiff's expert

could not determine the strength of the wood when it was installed, nor could he determine how much of the loss measured in 2002 was attributable to thirty years of use. (Tr. at 51, 148, 192.)  Defendant's expert also stated there was no way to determine the strength of the wood when it was installed.  The record contains no evidence that defendant violated the industry standard, i.e., that at the time of treatment and installation the strength loss was greater than 10%.

Plaintiff also contends that defendant has admitted a breach of industry standards through its default.  Paragraph 21 of the default complaint states that defendant was "under a duty . . . to ensure that the product met or exceeded industry standards." Paragraph 22 reads "[i]n violation of said duties, [defendant and predecessors] were guilty of recklessness, negligence and/or gross negligence," and lists eight grounds for breach of duty.  However, defendant's default does not admit breach of industry standards.  Through its default, defendant admits plaintiff's well-pleaded allegations of fact, but is not held to admit conclusions of law.  Ryan v. Homecomings Fin. Network, 253 F.3d 778, 781 (4th Cir. 2001) (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)).  "Even after default, it remains for the court to decide whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." 10A Wright & Miller, Federal Practice & Procedure § 2688 (3d ed. 1998).  "The existence and scope of the duty are questions of law" for the court to determine.  Miller v. Camden, 317 S.C. 28, 31, 451 S.E.2d 401, 403 (Ct. App. 1994).  Since the existence of duty is a question of law, and default status does not concede legal conclusions, then the existence of a duty towards

plaintiff is not admitted via default. There is no breach without a duty. For these reasons, certification of the industry standards issue is unnecessary.

Plaintiff also contends a tort action may lie because the product posed a serious risk of injury. Addressing the economic loss rule in an asbestos case, the Fourth Circuit permitted a negligence action based on damage to the property owner caused by the threat posed by that inherently dangerous product. City of Greenville v. W.R. Grace & Co., 827 F.2d 975, 978 (4th Cir. 1987). The court concluded that plaintiffs should not have to wait until "asbestos-related diseases manifest themselves before maintaining an action for negligence against a manufacturer whose product threatens a substantial and unreasonable risk of harm by releasing toxic substances into the environment." Id. However, subsequent discussions of the economic loss rule in the generic context suggest that a threat to bodily injury is not an universal exception to the general rule. Grace and Kennedy's "threat" exemptions are based on the unique aspects of asbestos litigation and the special builder-buyer relationship, respectively. See, e.g., Westinghouse, 826 F. Supp. at 1556 (limiting Grace and Kershaw County v. U.S. Gypsum, 302 S.C. 390, 396 S.E.2d 369 (1990) to "the unique realm of asbestos-litigation created law"); Kennedy, 299 S.C. at 346, 384 S.E.2d at 737 (noting "public policy further demands the imposition of a legal duty on a builder to refrain from constructing housing that he knows or should know will pose serious risks of physical harm."). The supreme court's descriptions of the generic rule generally omit threat of injury as grounds to permit tort claims. See Kennedy, 299 S.C. at 345, 384 S.E.2d at 736; Kershaw, 302 S.C. at 393, 396 S.E.2d at 371 (1990).

The case at bar appears more similar to Westinghouse, 826 F. Supp. at 1556, which considered a tort claim arising from failure of equipment at a nuclear power plant. Judge Hawkins distinguished Grace on the basis that exposure to asbestos is harm in itself; in contrast, no radioactive leak or other injuries had yet occurred. Rather, plaintiffs in Westinghouse contended that the "product purchased does not perform as promised and in order to prevent future harm, the systems must be replaced." Id. The court concluded that plaintiff's remedy was limited to the replacement of the defective product.

As Judge Blatt noted in Bennett, Erie and its progeny mandate that "the federal courts sitting in diversity rule upon state law as it exists and do not surmise or suggest its expansion." Id. (quoting Burris Chemical, Inc. v. USX Corp., 10 F.3d 243, 247 (4th Cir. 1993)). Adopting plaintiff's position would represent a significant development of state tort law. As such, the court certifies the following question to the South Carolina Supreme Court:

> May a user of a defective product maintain a negligence action against the manufacturer when the resulting damage is limited to the defective product, if the product poses serious risk of physical harm?

## II.    SCUTPA

Defendant contends the court incorrectly concluded that Reynolds v. Ryland Group, Inc., 340 S.C. 331, 531 S.E.2d 917 (2000), focuses on privity between a SCUTPA claimant and wrongdoer. For the reasons stated in the September 6th Order, this court read Reynolds to impose a privity requirement for SCUTPA claims only in the home builder/buyer context. A recent decision by Judge Joseph Anderson Jr. involving a dispute factually similar to the present case interpreted Reynolds to impose a privity

requirement on all SCUTPA claims.  See South Carolina Department of Mental Health v. Hoover Universal, Inc., C.A. No. 3:03-4118, at 8 (D.S.C. Oct. 4, 2005).  Judge Anderson noted,

> SCUTPA remedies are limited to purchasers who engaged in a consumer transaction with the defendant.  [P]laintiffs must have purchased the product directly from the defendant in order to recover under SCUTPA.  Plaintiffs assert that privity is not required by the SCUTPA, though they do not cite to any authority for this proposition and do not otherwise distinguish Reynolds.

Oct. 4, 2005 order at 8.  Defendant suggests Reynolds does not involve privity, but rather addresses the causation element of SCUTPA and merely reiterates the concept that a plaintiff must suffer an injury as a result of a SCUTPA violation in order to recover under the Act.  (Def.'s mot. for recons. at 4.)  The parties disagree as to the application of defendant's reading of Reynolds.  Neither the complaint nor the record states how plaintiff received the wood, whether through a direct contractual relationship with defendant or via distribution channels as a subsequent purchaser.  However, plaintiff has stated that it did not contract with defendant. (Pl.'s return to def.'s mot. for J. at 7, Feb. 11, 2005.)

Besides Judge Anderson's order, this court has found no case or commentary analyzing Reynolds in the relevant context.  As such, this court is left with little guidance to parse three distinct, yet reasonable readings.  Since Reynolds could have a significant impact on the availability of SCUTPA claims, the court certifies the following question to the South Carolina Supreme Court:

> Does the South Carolina Unfair Trade Practices Act, as interpreted in Reynolds v. Ryland Group, Inc., 340 S.C. 331, 531 S.E.2d 917 (2000), provide a cause of action to parties who neither purchased the product at

issue directly from defendant nor received any communications from defendant regarding the product?

### III. CONCLUSION

It is therefore **ORDERED** that those portions of the September 6, 2005 Order inconsistent with this Order are hereby **AMENDED**. It is further **ORDERED** that the above questions be presented to the Supreme Court of South Carolina for its review.

                                                        **DAVID C. NORTON**
                                                        **UNITED STATES DISTRICT JUDGE**

**January 31, 2006**
**Charleston, South Carolina**